

**DEPARTMENT OF THE TREASURY**

**INTERNAL REVENUE SERVICE**
**Washington, D.C. 20224**

**SMALL BUSINESS/SELF-EMPLOYED DIVISION**

## Memorandum of Interview

Date:                                    July 11, 2024

IRS Interviewers in person:      Jean Lane, Revenue Agent
                                         Jeremy Matthews, Revenue Agent
                                         Erika Ramirez-Castillo, Group Manager
                                         Javier Cortes, OPI Analyst

**GOVERNMENT EXHIBIT**

03/04/2025

25-mc-12

No. 3

Other IRS Employees present
on Teams call:                         Bryant Smith, IRS Counsel Attorney

Interviewee:                          Luis Martinez Ebra

Subject:            Interview of Luis Martinez Ebra for summons served on June 13, 2024

On July 11, 2024, starting at approximately 11:30 am EST, Revenue Agent Jean Lane (hereafter referred to as "Agent Lane") and Revenue Agent Jeremy Matthews (hereafter referred to as "Agent Matthews") of the Internal Revenue Service interviewed Luis Martinez Ebra, (hereafter referred to as "Martinez") at the IRS office located at City View 2, Suite 2000, 48 Carr 165, Guaynabo, PR  00968.

Prior to the interview, Agent Lane and Agent Matthews had discussions with Martinez's representatives, Attorneys Sanford Boxerman (hereafter referred to as "Boxerman") and Michelle Schwerin (hereafter referred to as "Schwerin") of Neill Schwerin Boxerman, P.C.   Martinez's attorneys had advised Martinez not to answer any questions for the reason he had not had sufficient time to confer with counsel prior to the scheduled appearance and that he was a party to a nondisclosure agreement.  IRS 7609(i)(3) was previously provided to and discussed with Boxerman and Schwerin.

Martinez confirmed his identity. Martinez said the following:

Martinez has a Bachelors degree in Business Administration with an emphasis in Accounting.  Martinez is a licensed CPA and is licensed to practice in Puerto Rico.

Martinez first heard about TLS from an employment ad.  The ad was for a Finance Director and he responded to the ad.  Martinez was offered the position and he started working at TLS in 2015.  David Runge (hereafter referred to as "Runge") hired Martinez and Runge was his supervisor.  Martinez always worked in Puerto Rico for TLS.  He never worked on the mainland U.S.

Martinez was always an employee and not a contractor of TLS.  Martinez signed an employment contract with TLS.  Martinez did not work for anyone else or his own business while he was employed by TLS.

Martinez is no longer employed by TLS.  He left TLS in February 2023.  Martinez has not provided any services to TLS since he left TLS in February 2023.

Martinez has never performed services directly for Runge, Richard Colombik, or Jeremy Colomik,

Martinez has never worked for Meridian Trust Company.

Martinez does not know who currently manages TLS.

Martinez does not know if Runge or Richard Colombik still work at TLS.

Martinez did not know Runge or Richard Colombik prior to him working for TLS.  Martinez does not have a relationship with Runge or Richard Colombik outside of his work at TLS.

Martinez does not know if David Runge or Richard Colombik resided in Puerto Rico over half the year in years 2018, 2019, 2020, 2021, 2022 or 2023.

Martinez did not prepare any Forms 3520 or 3520A for any foreign trusts that were created for or by TLS or a TLS client.


Martinez refused to answer the following questions, claiming the 5th Amendment and his non-disclosure agreement in response to each question.

1)  Describe the provisions of your employment contract with TLS.

2)  What were your job duties at TLS?

3)  How were you compensated by TLS? (ie. Hourly, salary, bonus, etc)

4)  Why were your payments structured this way?

5)  Why did you stop employment at TLS?

6)  Did you perform other services for TLS outside of your employment contracts?

    What was the scope of services and types of services?

7)  Did you perform services for Management Services International ("MSI")?

    Describe in detail what services were provided

    How were you compensated?


8)  How many hours a week did you perform services for TLS?

9)  Describe your duties while working at TLS.

10) Do/did you ever have ownership in TLS and/or a TLS Division?

11) Do or did you ever work with TLS clients directly?

12) Can you describe the details for the following tax savings strategies that were offered to TLS Clients?

    a.   Fringe benefits

    b.   TLS Division (Puerto Rico) providing services to U.S. clients

    c.   Micro-captives

    d.   Deferred compensation

    e.   Other strategies offered

13) Describe your involvement for each strategy.

14) Who was involved in developing the tax position for each of the strategies?

15) What are the options for a TLS client to receive Distributions from their respective TLS Division?

16) What were clients told about the taxability of distributions they received from their TLS Division?

    Did you agree with this tax position?

17) What were clients told about the taking loans from their TLS Division?

18) What were the clients told about the taxability of any loans they received from their TLS Division?

19) Who created the presentations made to potential clients for all of the various strategies offered by TLS?

20) Who made the presentations to potential clients of TLS to discuss the various strategies offered by TLS?

21) Who created the original Capital Preservation Report ("CPR")?

22) Did you have any involvement with the creation or updates to the CPR?

    If yes, describe

23) Did you ever make CPR presentations to clients?

24) Walk through the steps for a CPR presentation made to a client.

25) What types of services did TLS or TLS Division provide to the client?

26) How was the pricing of these services determined?

27) Who was involved with the pricing of these services?

28) Did you ever have a discussion with anyone at TLS about TLS clients moving their owner and/or their U.S. employees under their TLS Division?

    If yes, provide details of these discussions.

29) What was the main goal behind moving the client owner and/or employees under their TLS Division?

**Puerto Rico Trust Strategy**
The Puerto Rico Trust Strategy means the strategy utilized by TLS to have a Puerto Rico Trust (S2C2 Irrevocable Grantor Trust) become the owner of each TLS Division.

30) Who did you first discuss the Puerto Rico Trust Strategy with?

When was this?

31) Who first came up with the Puerto Rico Trust Strategy?

32) Why was the Puerto Rico Trust Strategy pursued?

33) Whose idea was it to pursue the Puerto Rico Trust Strategy?

34) Who did the research to come up with the tax position for the Puerto Rico Trust Strategy?

35) What was your role in the development and utilization of the Puerto Rico Trust Strategy?

36) What was D. Scott Robinson's role in the development and utilization of the Puerto Rico Trust Strategy?

37) What was David Runge's role in the development and utilization of the Puerto Rico Trust Strategy?

38) What was Richard Colombik's role in the development and utilization of the Puerto Rico Trust Strategy?

39) What was Christopher Hynes' role in the development and utilization of the Puerto Rico Trust Strategy?

40) What was Marilyn Cruz's role in the development and utilization of the Puerto Rico Trust Strategy?

41) How did Marilyn Cruz become involved with the Puerto Rico Trust Strategy?

42) Describe in detail how the Puerto Rico Trust Strategy works

    a. S2C2 Irrevocable Grantor Trust
       Who is the Grantor?
       Who is the Beneficiary?

    b. WYR 2019-2 Grantor Trust (U.S. Trust)
       Who is the Grantor?
       Who are the Beneficiaries?

    c. Sub-trusts
       Who is the Grantor?
       Who is the Beneficiary?

    d. Series LLCs

       i. Why were these used in the strategy?

       ii. Why did Marily Cruz have unused Series LLCs available?

43) What was the structure using a Puerto Rico Trust prior to the creation of S2C2?

44) Did each client create their own Puerto Rico Trust?

45) Who was the grantor of each of these Puerto Rico Trusts?

46) Who was the beneficiary of each of these Puerto Rico Trusts?

47) Who were the trustees of each of these Puerto Rico Trusts?

48) Who chose the Trustee of each of these Puerto Rico Trusts?

49) Why did the structure change from each client creating their own Puerto Rico Trust to using S2C2 Puerto Rico trust for all clients?

50) Who made the decision to make this change?

51) Were Series LLCs and Sub-Trusts used in this Puerto Rico Trust structure?

52) Provide details for this Puerto Rico Trust Structure prior to creation of S2C2

53) Who is Meridian Trust Company?

54) Does David Runge or Richard Colombik have any ownership interest in Meridian Trust Company?

55) What relationship does TLS, Runge, and Colombik have with Meridian Trust?

56)  Are you aware of any ownership changes in TLS in the last 3 years?

 If yes, describe


**David Runge and Richard Colombik:**

57) What roles/position did David Runge have at TLS when you worked at TLS?

58) What roles/position did Richard Colombik have at TLS when you worked at TLS?


Martinez was asked if anyone is assisting him with the payment of his legal fees for his representation of this summons response.  Boxerman and Schwerin replied that they do not want Martinez to answer this question due to 5th amendment that was previously discussed, but also there are broader grounds for not responding.

It was agreed that Boxerman and/or Schwerin will contact Agent Lane by July 22, 2024 to let her know if Martinez will provide any additional answers to the questions asked during the interview of Martinez on July 11, 2024 or if summons enforcement should be pursued.

This memorandum of interview was prepared by Revenue Agent Jean Lane and finalized on August 12, 2024 after reviewing the notes made during and immediately after the interview with Martinez by Agent Lane and Agent Matthews.  Agent Lane reviewed and signed this memorandum on August 12, 2024.


Jean A. Lane   Digitally signed by Jean A. Lane
               Date: 2024.08.12 13:26:10 -05'00'
_____

Jean Lane, Revenue Agent